————o————

STATE OF MISSOURI, Respondent, *vs.* WILLIAM BAILEY, Appellant.

1. *Practice, civil—Instructions.*—Instructions which are not based upon facts in the case, and are calculated to mislead, although correct as abstract propositions of law, should be refused.

*Appeal from Henry Circuit Court.*

*McBeth & LaDue,* for Appellant.

*H. Clay Ewing, Atty. Genl., and B. G. Boone,* for Respondent.

WAGNER, Judge, delivered the opinion of the court.

The defendant was indicted for murder in the first degree, in killing one Hopkins, and on his trial he was convicted of manslaughter in the second degree. To reverse that judgment he has appealed to this court.

The evidence shows that ill-feeling had, for some time, existed between the defendant and Hopkins, in consequence of Hopkins being the author and circulator of a cruel slander against defendant's mother.

On the evening when the homicide was committed, Hopkins was in a store in the town in which he lived, and in a short time thereafter, defendant came in. Hopkins was boisterous and flourished his pistol, and accused defendant of following him, ordered him to leave, and then declared that they might as well settle their difficulty at that time. Defendant denied that he was following him, but declined leaving, saying that he had as good right to stay there as Hopkins. A couple of men then took hold of defendant and besought

him to leave, in order to avoid a conflict. He went out with them in front of the door, and Hopkins immediately followed. At that time defendant's mother, who had been informed of what was going on, came up and said to Hopkins, that if he wanted to shoot anybody to shoot her. He answered her with a disgusting blackguard expression, and the firing immediately commenced, several shots being fired on each side.

The witnesses do not attempt to fix, with any accuracy, the point as to who fired the first shot. Some say that they think the defendant fired first; others say that Hopkins was the first to fire, but all concur, that the firing on both sides was nearly simultaneous.

A great many objections are now urged against the proceedings below, but after examining them carefully I am of the opinion, that most of them are too technical to be available, and it will therefore be only necessary to consider some of the instructions excepted to. As abstract propositions of law, the instructions are correct, and the only question to be determined, is, whether they were warranted by the evidence.

The fifth instruction given for the State tells the jury, that if they find, from the evidence, that defendant, Bailey, and deceased, Hopkins, had a difficulty which resulted in the death of Hopkins, and that the defendant commenced the difficulty or brought it on by any willful and unlawful act of his, or that he voluntarily, and of his own free will and inclination, entered into the difficulty, then there is no self defense in the cause, and they should not acquit on that ground. In such a case it makes no difference how imminent the peril may have been in which the defendant was placed during the difficulty.

The first part of this instruction was calculated to mislead. The evidence, so far from supporting it, was directly against it. There was no evidence tending to show, that defendant commenced the difficulty, or brought it on by any willful or unlawful act of his. But on the contrary, it is clear, that while in the store, he tried to avoid the altercation with Hopkins. He allowed himself, without resistance, to be taken

away, and was followed out of the door. Hence, this part of the instruction was wholly unauthorized, as there is nothing in the facts, as presented by the bill of exceptions, that can be tortured so as to show that the defendant either sought or commenced the difficulty in any manner.

The sixth instruction is as follows : "If you find, that defendant, William Bailey, willfully and deliberately killed said George W. Hopkins by shooting him with a pistol, there is no murder in the second degree in the case, but the homicide is murder in the first degree, or manslaughter, or justifiable homicide according to circumstances; that is, if Bailey shot and killed Hopkins in malice, it is murder in the first degree; if Bailey shot and killed Hopkins in a cruel and unusual manner in a heat of passion as above described, but without a design to kill, it is manslaughter in the second degree, and if he, Bailey, shot and killed said Hopkins, in a heat of passion, without a design to effect death, not in a cruel and unusual manner, the offense is manslaughter in the third degree."

There is no evidence whatever, even tending to prove that the shooting was done in a heat of passion and without a design to kill, so as to make it manslaughter in case of death. None of the characteristics or *indicia* of manslaughter in any degree, are anywhere developed in the case.

When the parties met in front of the store, they mutually commenced the firing. Which fired the first shot it is impossible to tell, as they both fired so nearly at the same time. It is evident then, that the grade of the offense could not be manslaughter. It was either murder or justifiable homicide. The instruction, therefore, was erroneous and should have been refused. Instructions numbered eight and nine, defining the punishment for manslaughter in the different degrees, were also wrong, because not applicable to the case.

It follows that the judgment should be reversed and the cause remanded ; the other judges concur.