## THE STATE v. SPENCER, Appellant.

### Division Two, February 12, 1901.

**Murder:** THREATS: UNCONNECTED WITH ASSAULT OR HOSTILE DEMONSTRATION: INSTRUCTION. Uncommunicated threats made by the deceased are admissible as tending to show who is the aggressor in an affray, but such threats, when there is no attempt to carry them into execution, and when they are unconnected with any hostile demonstration, afford no justification for the killing of the threatener. An instruction which told the jury that they should disregard the evidence of threats, if they believed that the deceased was not assaulting or attempting to assault defendant, or making any hostile demonstrations toward him at the time he shot deceased, *held*, proper.

State v. Spencer.

Appeal from Audrain Circuit Court.—*Hon. E. M. Hughes,*
Judge.

AFFIRMED.

*P. H. Cullen* and *W. W. Botts* for appellant.

(1) Uncommunicated threats may be considered by the
jury as a circumstance tending to show that the deceased made
an attack. State v. Elkins, 63 Mo. 165; State v. Alexander,
66 Mo. 148; State v. Lee, 47 Mo. 167; State v. Sloan,
47 Mo. 611; State v. Keene, 50 Mo. 309; State v. Hay-
den, 83 Mo. 198; State v. Downs, 91 Mo. 21; State
v. Harrod, 102 Mo. 609; State v. Bailey, 94 Mo. 316;
State v. McNally, 87 Mo. 649; State v. Hopper, 142 Mo. 478;
Underhill Crim. Evid., sec. 326; Wharton Crim. Evid. (9
Ed.), sec. 326. (2) The evidence in the case shows that many
of the threats of deceased were made directly to or in the pres-
ence of the defendant, and that other threats made in his ab-
sence had been communicated to him, hence the jury had a
right to consider such threats in order to determine the reason-
ableness of defendant's apprehensions. State v. Harris, 76
Mo. 364; State v. Lee, 65 Mo. 165; Greenleaf on Evid. (14
Ed.), sec. 101; State v. Keene, 50 Mo. 360; State v. Abbott,
8 W. Va. 759. These communicated threats were original
facts, admissible and to be considered as such because they were
information upon which the defendant acted. Greenleaf on
Evid. (14 Ed.), secs. 100 and 101; People v. Shea, 8 Cal. 538.
(3) Where the evidence raises a doubt as to who was the
aggressor at the time of homicide—the deceased or the ac-
cused—and it further appears that the threats have not been
communicated to the defendant, evidence of such threat may
be considered by the jury. Rice on Crim. Evid., p. 594, sec.
370, and authorities there cited.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

If it be true that deceased was not making or attempting to make an assault on, or any hostile demonstrations towards, defendant at the time or just before the fatal shot was fired, then such threats would not justify defendant's taking the life of deceased, however strong they may have been, nor would they be sufficient to create in defendant's mind a belief that he was in real and immediate danger of his life or person. In fact, until some demonstration had been made by deceased towards defendant in a hostile manner or attitude, such threats would not enter into the question of defendant's reasonableness of apprehension of danger. Until the demonstration be made the question of danger is not before him for determination; hence, threats should not be considered until the deceased appears in an unfriendly manner towards defendant. This court has held that where the defendant was the aggressor and where the deceased, at the time he was killed, made no attempt to execute any previous threat, such threat would constitute no excuse or justification, and its refusal in evidence would not be error.    State v. Harris, 73 Mo. 287; State v. Eaton, 75 Mo. 586; State v. Elkins, 63 Mo. 159; State v. Hays, 23 Mo. 287; State v. Harrod, 102 Mo. 590; State v. Taylor, 64 Mo. 358.

GANTT, J.—The defendant was indicted, tried, and convicted of murder in the second degree in the Audrain Circuit Court.    From the conviction he appeals.

The evidence establishes that both the defendant and Benjamin Eddelman resided in Vandalia, Audrain county, on December 25, 1899.

Eddelman was a nightwwatch.    The city paid him $25 a month and the merchants and others supplemented his salary.

He was about thirty-nine years old. The defendant was twenty-five years old.

John Adkins kept a saloon in Vandalia. He drew the color line by having separate bars for the whites and negroes who patronized him.

About noon on Christmas day defendant had been drinking and made a disturbance in the saloon. He had pulled his coat and it would seem had started to make an assault with a knife on Eddelman, who was standing behind the bar. Eddelman drew a pistol which it afterwards appeared was empty, and ordered defendant to drop his knife.

Thereupon other parties intervened and took defendant out of the saloon. After leaving the saloon the defendant went to a livery stable close by. The mayor of the town, Mr. Smellzer, went to him and warned him that he must not create any disturbance and he expressed a willingness to fight the mayor who told him he didn't want to fight him, but would have no trouble. Defendant then said he had had a racket in the saloon and Eddelman had drawn his gun on him. The mayor told him he must be quiet; that Eddelman had gone home. Whereupon defendant said, "I will go down after him." Defendant was in a bad humor. After dinner defendant came to the saloon again and was standing in front of it, and Eddelman, the deceased, was in front of a meat market just across an alley.

He was talking to Eddelman, whereupon the mayor again told defendant he must keep quiet or he would have to lock him up, whereupon deceased said to the mayor, "John, lock him up, I don't want any more trouble with him this day." Defendant was very mad.

Two of defendant's friends then asked permission to take care of him and started off with him and they went over to the hotel. About two o'clock Eddelman, the nightwatch, was in

the saloon, standing near the corner of the counter and the ice chest. Defendant again appeared at the saloon armed with a revolver. He came in the front door and started back into the middle room, when his friend, Hesser, put his hands across the door to stop him, whereupon Adkins, the proprietor of the house, said to him, "You can't come in here." He said he wanted to see Adkins. Defendant came up to Adkins and said, "John didn't you call Ben Eddelman in here to put me out," and Adkins told him he didn't want any disturbance; if there was, he would put him out. He promised there should be no trouble. He then passed into the room where Eddelman was standing.

The defendant made his way to Eddelman, and several of the eye-witnesses testified that as soon as he got in reach of him he grabbed deceased by the throat with his left hand and simultaneously remarked, "Now I have got you." He held his pistol in his right hand over Eddelman's head and fired, the shot entering about two inches to the rear and above the ear, and penetrating the brain. Eddelman sank in his tracks and Adkins ran to him and laid him out on the floor. Defendant backed out of the saloon and ran south. He was apprehended by the mayor and locked up in the calaboose.

There was evidence of threats made by Eddelman against deceased and some very slight evidence that deceased was making some demonstration against defendant when defendant grappled with him and shot him.

The circuit court gave elaborate instructions on murder in the first and second degrees and manslaughter in the fourth degree and self-defense.

Upon an inspection of the record we discover no error whatever in the record proper, nor in the admission or rejection of evidence.

The instructions are not criticised save one, which is as follows:

State v. Spencer.

"The court instructs the jury that the evidence of threats made by deceased against defendant was admitted in the case solely because there was evidence showing or tending to show that just before the deceased met his death he was making or attempting to make an assault on the defendant, and if from all the facts and circumstances in evidence the jury believe that at the time or just before defendant shot deceased the deceased was not assaulting or attempting to assault the defendant or making any hostile or apparently hostile demonstration toward defendant, then you are instructed to disregard and not in any way consider the evidence of threats made by deceased against defendant in arriving at your verdict."

To the giving of which instruction the defendant objected, but the court overruled the objection and the defendant excepted and saved his exceptions at the time.

The giving of this one instruction, counsel for defendant assigns as error in this court.

A great array of authorities is marshalled to sustain the proposition that uncommunicated threats made by the deceased are admissible when there is doubt as to who is the aggressor in an affray, as tending to prove who was in fact the aggressor, but there is no doubt this is the law.   It has been iterated and reiterated by this court.   [State v. Bailey, 94 Mo. 316; State v. Sloan, 47 Mo. 610; State v. Harrod, 102 Mo. 609; State v. Elkins, 63 Mo. 165.]

And so the circuit court construed the law and admitted the evidence of the threats, those that were not communicated and those that were.   No error was made in excluding them.

This much the learned counsel for defendant concede, but they insist that in giving the instruction complained of, the court virtually withdrew them.

We do not so understand the instruction.   On the contrary we think it plainly tells the jury that notwithstanding

they may believe deceased made the threats imputed to him by defendant and his witnesses, yet, if from the facts and circumstances in evidence, including necessarily the threats which were in evidence under the sanction of the court, the jury believe that at the time or just before defendant shot the deceased, the deceased was not assaulting or attempting to assault defendant and was not making any hostile demonstration or apparently hostile demonstration toward defendant then such threats afforded defendant no justification for killing deceased and should be disregarded in making up their verdict.

This instruction was substantially approved in State v. Rider, 95 Mo. 484, in which the jury were instructed that although deceased had made threats against defendant, that alone would not palliate, justify or excuse defendant if at the time defendant shot deceased, deceased was making no attack or assault upon defendant and was making no demonstrations of violence toward him. This court then remarking of this instruction, "Nor can anything therein contained be fairly construed to intimate to the jury that such threats might not be considered by them for any legitimate purpose in the case."

So in State v. Eaton, 75 Mo. loc. cit. 592, this court said: "We are not to be understood as giving sanction to the doctrine, that a threatened man may hunt the threatener, and slay him because of the threat. Such is not the law of this State. Although it has occasionally, in some of the States, had the sanction of their highest judicial tribunals, we think we may safely say, that it is not permanently embodied in the jurisprudence of any State in the Union. The person threatened has no right to take the life of another, unless that other, when they meet, by his conduct manifests a purpose to carry the threat into execution; but such purpose may be manifested by conduct falling short of personal violence or an actual assault."

So understanding the law, the circuit court did not limit

defendant's right to defend himself to an actual assault or personal violence, but permitted him to act upon the threats, if any, in connection with any hostile demonstration, or apparently hostile demonstration, and in so doing gave him the full measure of the law in his behalf.

In this case the evidence on both sides clearly shows that the defendant deliberately sought the deceased; that deceased was making no effort to execute any threat previously made, if indeed he made any such, and did not seek the difficulty with defendant, but endeavored to avoid it, and was not the aggressor.   Under such circumstances the threats, if any, did not palliate or excuse the homicide, and so the court properly instructed the jury.   [State v. Taylor, 64 Mo. 358; State v. Eaton, 75 Mo. 586.]

As no other error is assigned, and we discover none in our own examination, the judgment must be and is affirmed.

In view of the facts disclosed, the defendant should esteem himself very fortunate in receiving so slight a punishment for so grave an offense.

Judgment affirmed.   *Sherwood, P. J.,* and *Burgess, J.,* concur.