EUGENE B. HENRY, Respondent, v. THE DISBROW MINING COMPANY, Appellant.

Springfield Court of Appeals, May 2, 1910.

1. NEGLIGENCE: Trespassers: Licensees: Duty of Landowner: Master and Servant. Defendant, a mining company, in operating a mudboat had attached a pulley on each side of a railroad switch track near its plant, and on the premises occupied by defendant under a lease which reserved to the lessor all use of the grounds not consistent with proper mining. A wire cable with one end attached to the hoister was run through these pulleys and the other end was attached to the mudboat. The switch track to which the pulleys were attached had for a long time been used as a footpath by the miners working in that vicinity. The plaintiff, an employee of defendant, had been to defendant's office to ascertain when he should work. He returned by way of the switch track. As he reached the point where the cable crossed the track, the hoister was started and the chain or hook holding one of the pulleys gave way and plaintiff was injured. *Held*, that defendant owed a greater duty to plaintiff than if he was a mere trespasser, an affirmative duty to exercise ordinary care to prevent injuring him.

2. ———: ———: ———: ———. The general rule is that the landowner or occupant owes no duty to trespassers or volunteers going upon his land for their own purpose, to maintain it in any particular condition for their benefit. They take the premises for better or for worse as they find them, and assume the risk of injury from their condition.

3. ———: ———: ———: ———. The rule applied to railroads with reference to the company's duty to persons at places where it has no right to expect a clear track is applied generally to other cases, so if persons are using premises as a pathway and have been using the same for such a length of time that their presence thereon is to be expected, they are not deemed to be trespassers, and it is the duty of the. owner or those in charge of or occupying said premises with knowledge of the use of the pathway by said persons to exercise reasonable care in the management of the property, or in the use thereof, so as not to negligently injure persons so using the pathway.

4. ——: ——: ——: **Master and Servant.** A servant going upon a master's premises to ascertain when his services will be needed is a licensee, and the master owes him a greater duty with reference to the safety of the premises than he owes to the trespasser.

5. **INSTRUCTIONS: Negligence: Instruction Not Supported by Evidence.** Plaintiff was injured on account of being struck by a cable because the pulley to which the cable was attached gave way. The instruction, among other grounds of negligence, submitted the question of negligence in using a defective hook, chain and pulley. *Held*, that there was no evidence that the hook, chain or pulley was defective, and for this reason the instruction was erroneous.

6. ——: **Should be Clear and Concise.** Instructions should, in a clear, concise and comprehensive manner, inform the jury as to what material facts must be found in order to recover, or bar a recovery. Instruction in this case criticised on account of its length.

Appeal from Jasper Circuit Court.—*Hon. Henry L. Bright,* Judge.

REVERSED AND REMANDED.

*H. W. Currey* and *Geo. V. Farris* for appellant; *John W. Halliburton* of counsel.

(1) Under the facts, the plaintiff was either a trespasser or a licensee without invitation. If he was even a licensee without invitation plaintiff owed him no affirmative duty, but only the obligation not to recklessly or purposely injure him. Shaw v. Goldman, 116 Mo. App. 340; Lowenstein v. Railroad, 134 Mo. App. 30; Yarnall v. Railroad, 75 Mo. 573; Berry v. Cemetery Assn., 106 Mo. App. 358; Glassner v. Rothchild, 106 Mo. App. 418; Smith v. Packing Co., 87 Mo. App. 9; Eisenberg v. Railroad, 33 Mo. App. 85; Smith v. Day, 86 Fed. 63, 100 Fed. 244, 116 Fed. 957; Brehmer v. Lyman, 42 Atl. (Vt.) 613; Flanagan v. Asphalt Co., 56 N. Y. Supp. 418; Lake Erie, etc., Co. v. Mauls, 51 N. E. (Ind.) 735. (2) The danger, if any, incident to the doing of defend-

ant's work was open and obvious to the plaintiff, and, being a mere licensee, the defendant owed him no duty except the duty not to recklessly or intentionally injure him, and he assumed whatever risk there was incident to his going upon defendant's premises, and the defendant's instruction No. 11 should have been given. Christner v. Tel. Co., 194 Mo. 209; Browning v. Railroad, 118 Mo. App. 449; McLean v. Burnham, 8 Atl. 25; Cunningham v. Journal Co., 95 Mo. App. 47. (3) Instruction No. 1, given for plaintiff, is erroneous in that it enlarged the charge of negligence in the petition and permitted a recovery on account of negligence not charged in the petition. Brisco v. Railroad, 118 Mo. App. 668; Allen v. Transit Co., 183 Mo. 411; Schoeder v. Transit Co., 111 Mo. App. 67; Sommers v. Transit Co., 108 Mo. App. 319; Duerst v. Stamping Co., 163 Mo. 607.

*R. A. Mooneyham, Lee Shepherd* and *Herb Crane* for respondent.

"An owner and occupier of land and premises is liable in damages to those coming to it, using due care, at his invitation or inducement, express or implied, on any business to be transacted or permitted by him, for an injury caused by the unsafe condition of the premises or land, or of the access to the land which is known to _im and not to them, and which he has negligently suffered to exist and has given them no notice of." O'Donnell v. Patton, 117 Mo. 19; Thompson on Negligence secs. 968, 976, 985; Welch v. McAllister, 15 Mo. App. 492; Hartman v. Muehlebach, 64 Mo. App. 578; Keen v. Schoening, 103 Mo. App. 77; Miller v. Peck D. G. Co, 104 Mo. App. 614; Sykes v. Railway, 88 Mo. App. 193; Lowenstein v. Railroad, 134 Mo. App. 30; Garden v. Light Co., 23 C. C. A. 649; Bryant v. Barnett, 26 L. R. A. 574; Young v. Oil Co., 185 Mo. 634; 29 Cyc. 451; Dawson v. Co., 70 S. W. 450; Sack v. Car Co., 112 Mo. App. 476; Beck v. Carter, 68 N. Y. 283; Witte v. Stiffle, 126 Mo. 304.

GRAY, J.—Plaintiff recovered judgment in the trial court for seven thousand dollars damages for personal injuries alleged to have been caused by the negligence and carelessness of the defendant, from which judgment defendant appealed.

The defendant, in January, 1909, and for some time prior thereto, was engaged in operating a lead and zinc mine in Jasper county, under a mining lease covering twenty mining lots, each two hundred feet square. There were running across the defendant's land several spurs of the Frisco Railway track and these were used in loading ore and gravel from the mine of the defendant and other mines in that vicinity. On Sunday, January 3, 1909, the defendant was engaged in cleaning out a sludge pond used in connection with its mining plant. This pond was cleaned by means of a mudboat which was operated by means of a wire cable, one end of which was attached to the boat, and the other end attached to a hoister which was situated in the mill building of the defendant, and some twenty-five or thirty feet above the surface of the ground. This cable ran in a straight line from the hoister to the ground, at a point about two hundred feet south of the hoister, where it passed around and through a wooden pulley, which for convenience will be named "Pulley A." From this pulley the course of the cable was changed to a westerly course, so as to make a right angle, and about twenty or thirty feet from "Pulley A" the cable passed through another pulley, which will be designated as "Pulley B," and from Pulley B the cable passed in a northwesterly direction to the mudboat, forming another slight angle.

The evidence on the part of plaintiff shows that "Pulley A" was attached to a rail of one of the spurs of the railroad track by means of a chain. One end of the chain was attached to the pulley, then passed around the rail and was hooked in the pulley or in the chain. This pulley was not fastened so as to be stationary, but

144 App—23

was fastened in such a manner that when the cable was tightened in pulling the mudboat, it raised "Pulley A" up from the ground to the extent of the slack in the chain, and when the cable was slackened, the pulley fell back to the ground, and it was claimed that when the hoister was started to pull the mudboat, this caused a sudden jerk against the chain and and hook holding "Pulley A" instead of a gradual and steady pull, had the pulley been stationary, and on account of the pulley being left loose in the manner above indicated, the weight required to pull the mudboat came against the chain and hook with a sudden jerk, and on account thereof the same was more liable to break than if fastened stationary.

The evidence shows that "Pulley B" was fastened in a stationary manner, and that it would have been an easy matter to have fixed "Pulley A" in the same way. It was further shown that when the mudboat was being moved, nearly all of the pull or weight was on "Pulley A" and that the weight of the mudboat, when filled, was at least one thousand pounds. It was also shown that the hook and chain would pull, with safety, more than one thousand pounds. The spurs of the railroad track ran in a northeasterly direction, so that the cable extending south from the hoister, crossed one of the tracks, and was fastened to a rail on the second track, and then extended west to "Pulley B" attached to the west rail of the first track. The result of "Pulley A" giving way when the mudboat was being pulled, would be to cause the cable to be jerked with great force, so as to make a direct line from "Pulley B" to the hoister.

The testimony shows that in the vicinity of defendant's mine, were other mines employing a large number of men, and that for several years previous to January, 1909, the employees of the defendant's mine and other mines, had used the west track as a pathway in going to and coming from their work in the mines. This was not the only route used by the men, but was one of the regu-

lar routes, and used to such an extent that the defendant must have had notice thereof.

At the mine of the defendant two shifts were being worked each day, and known as the night shift and the day shift. The plaintiff had been engaged in working on the night shift, and had worked Friday night previous to January 3, which was on Sunday. He did not work Saturday night, because it was not the custom of the company to work Saturday night. He had heard that it was the intention of the company to change his shift, and according to his testimony, he went to the mine on Sunday morning for the purpose of ascertaining whether he should report for duty on the night shift or the day shift.

The plaintiff's version is that after he was through with his business at the plant, he started down the railroad track to the southwest and when he had reached a point where the cable crossed the track, the defendant's servants started the hoister for the purpose of pulling the mudboat, and as they did, the chain or hook holding the east pulley gave way and thereby caused the cable to move to the west quickly and with great force, striking him and breaking his leg, and thereby caused him serious and permanent injuries.

The petition states the alleged negligence of the defendant as follows: "That it was the duty of the defendant to so fasten said cable by means of a pulley and hook and chain which were then and there reasonably safe so as to prevent injuring plaintiff and other persons passing on and along said track as they lawfully had a right to do. That it was the further duty of defendant to warn plaintiff of its intention to start the hoister engine, aforesaid, a sufficient length of time to enable plaintiff to reach a place of safety. But the defendant wholly disregarding its duty in this behalf wholly failed to provide a chain and hook and pulley which were then and there reasonably safe, but negligently and carelessly furnished and used a chain, hook and pulley which were

unsafe and dangerous and liable to break and injure plaintiff, and carelessly and negligently constructed and attached the pulley with hook and chain in such a manner as to be unsafe and dangerous."

The answer in addition to a general denial, alleged contributory negligence, and charged that plaintiff with full knowledge of the fact that the defendant had its wire rope stretched across its lots, and with full knowledge that the defendant was using the same to pull a large and heavy mudboat, voluntarily and of his own free will, walked over the defendant's rope and stood in the place where the said plaintiff knew that the breaking of said rope would be likely to injure him; and the defendant alleged that the plaintiff had no right to go to such a place, but was on the private property of the defendant for his own convenience, without any right, invitation or license so to do, and was a trespasser, and the defendant owed him no duty whatever.

The appellant tried the case in the lower court and here, upon the theory that the plaintiff was either a trespasser or a mere licensee without invitation, and that it owed him no affirmative duty, but only the obligation not to recklessly or purposely injure him. If appellant's contention is correct, then the cause must be reversed, as the trial court refused to adopt that theory.

The general rule is that the landowner or occupant owes no duty to trespassers or volunteers going upon his land for their own purpose to maintain it in any particular condition for their benefit. [Straub v. Soderer, 53 Mo. 38; Shaw v. Goldman, 116 Mo. App. 332, 92 S. W. 165.]

Volunteers, mere licensees and trespassers, as a general rule, take the premises for better or for worse, as they find them, assuming the risk of injury from their condition. [Kelley v. Benas, 217 Mo. 1, 116 S. W. 557.]

It cannot be said that plaintiff was a trespasser. According to his testimony, he was an employee of the defendant, and went to the company's office for the pur-

pose of learning something about his employment. Putting his relation most favorable to the defendant, he was at least a licensee, and was not wrongfully on defendant's premises.

There is another feature of the case which appeals to us with considerable force in determining the question of the duty of the defendant in the premises. The defendant was not the absolute owner of the property, but its rights, under the evidence, commenced on the first day of June, 1908, when it procured a mining lease upon the property. The lease was offered in evidence, and under its provisions, all uses of the ground not consistent with thorough and proper mining, as required under the provisions of the lease, were reserved to the lessor. The evidence shows that for several years before the making of this lease, the miners engaged in their work at the different mining plants in the vicinity, had used this railroad track to such an extent that a beaten path was worn between the rails. The defendant insists that this makes no difference and ignored this proposition in the presentation of its case in this court.

While the general rule is as above stated, yet the courts recognize the fact that the rule may be modified by special circumstances. The railroad company has the right to a clear track, and generally speaking, it is not liable for injury to persons upon its tracks, but if the company, with the knowledge that persons are in the habit of, and had been for sometime, using its tracks as a foot-path, so that the company has no right to expect a clear track, then it is the duty of the company to exercise reasonable care to prevent injuring persons so on the track at such places. [Chamberlain v. The Railroad, 133 Mo. 587, 33 S. W. 437; Hufft v. Railroad, 222 Mo. 286, 121 S. W. 120; Hawkins v. The Railroad, 135 Mo. App. 524, 116 S. W. 16.]

If a person is on the track as a trespasser, or at a point where the company has no right to expect his presence, then the company owes him no duty until after

his condition is discovered, but if he is on the track at a point where the company does not have the right to expect a clear track, then it is the duty of the company to exercise reasonable care to discover his presence on the track. [Hufft v. Railroad, 222 Mo. 286, 121 S. W. 120.]

The rule applied to railroads is applied generally to other cases. If a person knows that people are using property as a right of way, and have been using the same for such a length of time that the presence of persons upon the same is to be expected, then it is his duty in making excavations across such pathway, or putting obstructions thereon, to exercise reasonable care, and not negligently injure persons so in the habit of using such pathway. [Beck v. Carter, 68 N. Y. 283, 23 Am. Rep. 175; Bingford v. Johnson, 82 Ind. 430; Allison v. Haney, 62 S. W. 933; DeTarr v. Ferdheim Brewing Co., 61 Pac. 689; Rooney v. Woolworth, 61 Atl. 366; Cahill v. The E. B. & A. L. Stone & Co., 96 Pac. 84; Briscoe v. Henderson Lighting & Power Co., 62 S. E. 600.]

In DeTarr v. Ferdheim Brewing Co., supra, the rule is stated in the following language: "Where the public has passed over private property for a long time with the implied permission of the owner or those who control the same, and where it may be said that a portion of the property is temporarily devoted to public use, persons using the way are not deemed to be trespassers or mere licensees; and the owner or those in control, cannot without liability make excavations, nor leave unprotected openings so close to the line in such a way as to render travel thereon unsafe."

We do not find that the trial court committed any error in refusing to adopt the theory of defendant on this point. If we leave out of the case the material fact that plaintiff was an employee of the defendant and went to its office for the purpose of learning something about when he should renew his labors for it, yet in as much as the evidence shows that long prior to the time the defendant acquired its lease upon the premises, the rail-

road track that plaintiff was using at the time he was injured, had been used as a foot-path for the miners working in that vicinity, the defendant could not ignore this situation in stretching its cable across this pathway, and did not have the right to treat the persons using the pathway as mere trespassers, and to whom it owed no duty except not to willfully injure.

At the request of the plaintiff, the court gave to the jury the following instruction:

"The court instructs the jury that if you believe from the evidence in this case that on or about the 3rd day of January, 1909, at the time of plaintiff's injuries mentioned in his petition, if you find he was injured, that the plaintiff at the time of receiving such injuries was rightfully on the path of the railroad track of the St. Louis & San Francisco R. R. Company, on his return from defendant's mining plant where he had been to see about matters connected with his employment, if he was there to see about matters connected with his employment; and if you further believe from the evidence that at the time of the injuries mentioned in his petition, the defendant company had negligently and carelessly constructed, fastened and maintained across said company's track the cable used in connection with hook and chain mentioned in the petition in such a manner as to be unsafe to persons walking on and along the path of said track, including plaintiff; and if you further believe from the evidence that many persons were at that time and had been for several years prior thereto accustomed to use said track as a foot-path to and from points in each direction therefrom and to the mining plants in that vicinity, and that said track had been used in this way continuously for many years, and that defendant's agents and servants in charge of the work of cleaning the sludge pond, mentioned in evidence, could reasonably have expected persons on said track at that place on account of the frequent use thereof by footmen.

And if you believe and find from the evidence that the defendant negligently and carelessly failed and neglected to warn plaintiff of its intention to start the hoister to which said cable was attached, and that by reason of defendant's negligence, plaintiff was injured as mentioned in evidence, and if you further believe from the evidence that the defendant knew or by the exercise of ordinary care could have known the dangerous and defective condition of the hook and manner of fastening of said pulley, hook and chain mentioned in evidence, if any, and if you find it was dangerous and defective, a sufficient length of time before the injuries mentioned in evidence to have remedied the same and averted the accident and failed to do so; and shall further find and believe from the evidence that the defendant company, its agents and servants in charge of said mine knew or by the exercise of ordinary care could have known that persons including plaintiff while on and along the path of said track at that point by reason and in consequence of the dangerous and defective condition of said chain, hook and pulley, and the manner in which same were fastened, if the same were dangerous and defective, were likely to suffer harm or injury, and if you shall further believe from the evidence that on said date plaintiff was rightfully on the path of said railroad track, and while in the exercise of ordinary care on his part for his own safety if you so find, and that by reason and in consequence of the negligence of the defendant in making use of defective and insufficient chain, hook and pulley, or in fastening same to said track in a manner which was careless and dangerous, if you find they were dangerous and by reason thereof said hook suddenly broke and by reason thereof the cable mentioned in evidence struck plaintiff with great force and violence, and that by reason of and in consequence of the careless and negligent acts and conduct of the defendant, the plaintiff was injured as mentioned in evidence, and if you shall further find from the evidence that the acts and conduct

of the defendant company were under the circumstances careless and negligent, then your verdict should be for the plaintiff."

There was no evidence in the case that the hook, chain or pulley were defective. In fact, it stood admitted that they were the same as the others used about thirty feet away. The only theory upon which defendant was entitled to go to the jury was that the hook and chain were carelessly fastened to the track in the manner as heretofore stated.

The instruction authorized the jury to return a verdict if they found that plaintiff's injury was due to the use of the defective and insufficient chain, hook and pulley, or due to the careless manner in which defendant had attached the same to the track.

There are three allegations of negligence in the plaintiff's petition. First, that the defendant negligently and carelessly failed to warn the plaintiff of its intention to start the hoisters; second, that the defendant carelessly used an insufficient, defective and dangerous hook, chain and pulley, and third, carelessly and negligently attached the pulley with hook and chain in such a manner as to be unsafe and dangerous.

It was evidently the intention of the plaintiff in his instruction, to submit all of the said acts of negligence in the one instruction, and connected with the word "and." In the first paragraph of the instruction, he submitted the question of the defendant's carelessness in not warning him of its intention to start the hoister, and then required the jury to further believe and find the other acts of negligence, describing them; and then proceeds with these words: "And if you shall further believe from the evidence that on said date plaintiff was rightfully on the path of said railroad track, and while in the exercise of ordinary care on his part for his own safety, if you so find, and that by reason and in consequence of the negligence of the defendant in making use of defective and insufficient chain, hook and pulley, or in fasten-

ing same to said track in a manner which was careless and dangerous, if you find they were dangerous, and by reason thereof said hook suddenly broke and by reason thereof the cable mentioned in evidence struck plaintiff with great force and violence, and that by reason of and in consequence of the careless and negligent acts and conduct of the defendant, the plaintiff was injured as mentioned in evidence, you will find a verdict for plaintiff."

It is a familiar rule that instructions unsupported by evidence are erroneous. [Paddock v. Somes, 102 Mo. 226, 14 S. W. 746; State v. Edwards, 203 Mo. 528, 102 S. W. 520; Crow v. Houck's Mo. & Ark. R. Co., 212 Mo. 589, 103 S. W. 115.]

In reversing and remanding the cause for the reason above given, we call attention of the court and counsel to the length of the plaintiff's instruction No. 1. Instructions should, in a clear, concise and comprehensive manner inform the jury as to what material facts must be found in order to recover or bar a recovery. The issues in this case were few and simple, and yet said instruction covers two full pages, and it is not strange that error should be found therein. There is no reason why, all that is required in such instruction under the issues in this case, should not be put on two-thirds of a page of ordinary paper.

The premises considered, we will reverse the judgment for the error in giving plaintiff's said instruction, and remand the cause for new trial. All concur.