OPAL HUFFT, by Next Friend, JOHN HUFFT, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

**Division One, July 12, 1909.**

1. **NEGLIGENCE: Blocking Frogs: Licensees: "Other Persons."** Where the place of the accident was not a public crossing, but in the private switch yards of the defendant railroad company, and plaintiff, a voluntary pedestrian thereon, was a bare licensee, the defendant owed him no duty, either at common law or under the statute, to keep its switch frogs blocked to prevent injury to him. And there being no such duty, it was not negligence not to block the frogs. The statute (Sec. 1123, R. S. 1899), requiring the blocking of switch frogs "to prevent, as far as possible, the feet of employees or other persons from being caught therein," can be invoked only by employees, or other persons necessarily on the tracks to transact business with the company, or other persons who are there by the express invitation or direction of the company, and not by persons who go upon the tracks for their own convenience or pleasure.

2. ————: **Humanitarian Doctrine: Seeing Trespasser's Peril.** If the person injured is at a place where the railroad company is entitled to a clear track, and for that reason is not required to be on the lookout for persons on the track, then, before the plaintiff can recover, he must show that the injured person was seen to be in a position of peril by the company's servants in time for them, by the exercise of reasonable care and caution, after such perilous position was seen or known, to have prevented the injury.

3. ————: ————: **Seeing Expected Pedestrian's Peril.** If the person injured was at a place where the railroad company had no right to expect a clear track, and therefore there was upon its servants the incumbent duty to be on the lookout for persons on the track, then, if the injured person might have been seen by said servants to be in a perilous position in time for them, by the exercise of ordinary care and caution, to have prevented the injury, the company is liable, whether they actually saw him or not.

4. ————: ————: **Recovery on Theory Not Pleaded.** The instructions should be within the scope of the petition. The plaintiff who pleads that defendant was not entitled to expect

Hufft v. Railroad.

a clear track at the place of his injury, because of the long and continued user of the track at that place, cannot, there being no such user shown, recover on the theory that he was a pure trespasser.

5. ———: ———: **Long User: Matter of Law.** The court should not in its instructions assume, as a matter of law, that the evidence discloses such long and continued user by pedestrians of the railroad tracks at the place of the accident as indicates both knowledge of such user and acquiescence therein by defendant, where, at most, the evidence of use by the public is so meagre that it is questionable whether the question of user at the *locus* should even have been submitted to the jury. And there is a distinction between a day use and a night use.

6. ———: ———: **Failure to See Stop Signals.** If plaintiff was injured at a point where defendant's engineer had a right to expect a clear track, and he did not know plaintiff was on the track, defendant is not liable for the engineer's failure to sooner see the stop signals given by the brakeman who did see plaintiff's peril; and if he saw such signals he was not, if plaintiff was a pure trespasser on the track, required to heed them. And the only way plaintiff, a convenience pedestrian, can show the place was not one where the engineer had a right to expect a clear track, is to show that there had been such long and continued user by the public of the place as to indicate knowledge of the public user and acquiescence therein by defendant.

    *Held*, by WOODSON, J., that notice to the switchman of plaintiff's peril was notice to defendant.

Appeal from Laclede Circuit Court.—*Hon. L. B. Woodside*, Judge.

REVERSED AND REMANDED.

    *W. F. Evans* and *Woodruff & Mann* for appellant.

(1) Defendant's instruction in the nature of a demurrer should have been given and the case taken from the jury. (a) Because plaintiff was a trespasser in defendant's private switchyards. R. S. 1899, sec. 1105; Jackson v. Railroad, 157 Mo. 621. (b) Defendant's engineer had a right to presume that he had a clear track and that the yard would be clear of tres-

passers while he was doing the switching therein, and was not responsible to plaintiff, who was a trespasser, for failure to be on the alert to discover him. Callahan v. Railroad, 71 Mo. 117; Fearons v. Railroad, 180 Mo. 223. (c) Plaintiff being a trespasser, and defendant's engineer having no occasion to be on the lookout for him, the engineer could not be held to any duty to stop the train and prevent the injury until he saw or actually knew of plaintiff's perilous position, or, at least, until he actually saw the stop signal given by the brakeman. Fearons v. Railroad, 180 Mo. 208; Carrier v. Railroad, 175 Mo. 470; Zumalt v. Railroad, 175 Mo. 288; Barker v. Railroad, 98 Mo. 50; Yarnall v. Railroad, 75 Mo. 575; Swigert v. Railroad, 75 Mo. 475; Feebach v. Railroad, 167 Mo. 207. (d) And since plaintiff was a trespasser, it cannot be said that defendant's engineer owed him any duty to be on the lookout for the stop signal of the brakeman. Frye v. Railroad, 200 Mo. 407; Barker v. Railroad, 98 Mo. 54; Cooley on Torts, 660. (e) The evidence introduced by plaintiff attempting to show such a user of defendant's tracks by the footman traveling across the same, showed, at the most, only the use of the same by footmen in sporadic cases; did not locate such use at the place of the accident, and utterly failed to show that such use or pretended use of the tracks was ever within the knowledge or with the acquiesence or consent of the defendant company, and was insufficient to rebut the presumption to which the engineer was entitled of a clear track. Frye v. Railroad, 200 Mo. 401; Eppstein v. Railroad, 197 Mo. 732. (2) Instruction 1, given by the court for the plaintiff, is erroneous and the error is prejudicial and fatal, because it tells the jury that if they find from the evidence defendant's engineer could by the exercise of reasonable care have seen the signal given by the brakeman in time to stop the train and avert the injury complained of and did not do so, their verdict should be for plaintiff. (a)

Said instruction is erroneous because if plaintiff was a trespasser, as is contended by defendant, the engineer owed him no duty until he actually saw the stop signal and knew of the danger. Cases supra. (b) Because the right of the engineer to rely upon the presumption of a clear track must be removed by testimony of plaintiff showing such a user of the track at the place of the injury by the public, with the knowledge of defendant company, as would, under the circumstances of this case, require the engineer, as a man of ordinary prudence, to reasonably anticipate the presence of some one on the track before the burden of ordinary care in looking out for him can be imposed upon the engineer. Eppstein v. Railroad, 197 Mo. 720; Fearons v. Railroad, 180 Mo. 223. (c) Because the question as to whether there had been such a user of the tracks by the public at the place of the accident, with the knowledge of the company, as would rebut the presumption of a clear track and require ordinary care in looking out on the part of the engineer, is not a question of law to be determined by the court, as is done by this instruction, but a question of fact to be determined by the jury under proper instructions. The said instruction is, therefore, erroneous, because in it the court assumes, as a matter of law, that there was such a user of the track, and invades the province of the jury, which should have been first required to find from the evidence that there had been such a user before it could find a verdict for plaintiff based upon the failure of the engineer to use ordinary care. Eppstein v. Railroad, 197 Mo. 734; Morgan v. Railroad, 159 Mo. 270; Ahnefeld v. Railroad, 212 Mo. 300; Fearons v. Railroad, 108 Mo. 208; Everett v. Railroad, 112 S. W. 494; Chamberlain v. Railroad, 133 Mo. 603; Lemay v. Railroad, 105 Mo. 367.

222 Sup— 19

*Mayfield, Vernon, Curry & Mayfield* for respondent.

(1) Under the evidence, as submitted, it was proper to submit the case to the jury. The evidence was amply strong and sufficient to pass to the jury, and the doctrine is too well settled for dispute in this State that where there is any evidence tending (however light) to prove the allegations, it is error to take the case from the jury. This case shows wanton negligence. Woods v. Railroad, 188 Mo. 229; Moody v. Deutsch, 85 Mo. 243; Reardon v. Railroad, 114 Mo. 403; Lynch v. Railroad, 208 Mo. 21. Besides, evidence of this kind need not be direct and positive; it may be inferred from the surroundings. Woods v. Railroad, 188 Mo. 229; Rine v. Railroad, 100 Mo. 228; Lynch v. Railroad, 208 Mo. 21. (2) Appellant misconstrues the law and the theory of this case. It is clearly under that class of cases supported by the following authorities: Woods v. Railroad, 188 Mo. 229; Brown v. Railroad, 50 Mo. 461; Dunkman v. Railroad, 95 Mo. 245; Fielder v. Railroad, 107 Mo. 652; Reardon v. Railroad, 114 Mo. 404; Chamberlain v. Railroad, 133 Mo. 596; Morgan v. Railroad, 159 Mo. 280; White v. Railroad, 202 Mo. 562; Ahnefeld v. Railroad, 212 Mo. 303. (3) Courts should not and do not encourage continued litigation. The verdict was for the right party and should be sustained. Besides, every presumption is in favor of the finding of the lower court. These principles are fundamental.

GRAVES, J.—This is an action for personal injuries brought by Opal Hufft, a minor fifteen years old at date of accident, by his next friend, John Hufft, to recover of the defendant the sum of $20,000 for injuries alleged to have been received through the negligence of the defendant. The petition is in two counts.

On the night of June 23, 1905, at about 9 o'clock p. m., plaintiff, in company with another boy, was crossing the switchyards of the defendant in the city of Lebanon, Missouri, and caught his right foot in the frog of a switch, and while he was so fastened a backing train, then switching in said yards, ran over plaintiff in such way as to make it necessary to amputate his said right foot and leg.

In the first count of the petition, plaintiff alleges as negligence against the defendant a failure under section 1123, Revised Statutes 1899, to block or fill the switches, frogs and guardrails in its said switchyard with the best known appliances to prevent the feet of persons from being caught therein.

By the second count, which plaintiff denominates as his "common law action," he charges as negligence a violation of the said section 1123 in the first count suggested. Then he further charges that after plaintiff's foot was caught and fastened in said switch and while he was in this perilous situation "the defendant's agent and servants there and then in charge of said engine and cars, as above described, could and should have, by the exercise of reasonable care and caution on their part, prevented said injury, in that they could and should have discovered this plaintiff in this perilous position in time to have avoided same and could and should have, by the exercise of reasonable care and caution, stopped said engine and cars in time to have avoided injuring the plaintiff." That such failure was negligence upon the part of defendant.

As a third ground of negligence, it is charged that defendant operated said engine and cars at the time, i. e., nine o'clock p. m., without having a flagman, brakeman or other person on the rear end of said car which was so pushed over the foot and leg of plaintiff.

It is averred in the second count of the petition that at the time plaintiff's foot was caught he was traveling along said railroad in said switchyards in a path which for many years had been used as a roadway and footpath by travelers by the forbearance and tacit consent of the defendant.

Defendant's answer to the first count was (1) a general denial, and (2) a plea of contributory negligence. The answer to the second count was of the same character. Reply in the nature of a general denial.

Before going to the jury, plaintiff elected to stand on the second count of his petition and dismissed the first count thereof. By a verdict of the jury he was awarded damages in the sum of $5,000, upon which judgment was rendered against the defendant, and from which defendant, after unsuccessful motions for new trial and in arrest of judgment, has appealed to this court.

The necessary facts in this case may be stated briefly as follows:

Defendant's railway passes through the city of Lebanon, running east and west. One of its freight trains came in from the east, and going west reached Lebanon at about 8:10 in the evening of the date of the accident. This train pulled in on what is known as the passing track, which was the track north of the main track. The conductor thereof went to the station and there obtained information as to what switching was to be done. It also appears that at about that time there was due a regular freight train from Springfield, Missouri, going east. The defendant company maintained at Lebanon a switchyard in which there were eight or ten or more tracks. On the south side of the main track were two tracks, one known as a tank track, and the other as a stock track. The tank track left the main line at the switch which was fartherest west in this switchyard. From this tank

track the stock track branched off.  Upon the evening in question the crew in charge of this special freight train, being desirous of taking into this train a certain car of beer, cut loose its engine, thus leaving its cars standing on the passing track, and ran the engine down from the passing track to the main track and then back through the switch to the tank track and from the tank track to the stock track to get its car.  To so do it became necessary to couple onto the engine five cars, and when this was done the engine and cars pulled west from the stock track to the tank track and thence to the main track and out on to the main track.

Such was the action of the train in question; now as to the action of the plaintiff.

As we take it from the evidence the plaintiff and his companion, Jesse Easley, had been on the north side of the railroad tracks and were desirous to go to a point where they were drilling a well south of the railroad tracks and in the vicinity of the switchfrog whereat plaintiff was afterwards injured, and with this end in view crossed defendant's railroad tracks and went to said well.  At the time they knew that switching was being done by this train in the yards. Plaintiff also knew that switching was continuously being done in these yards in the making up of sundry trains therein.  After remaining at the well a short time, plaintiff and his companion concluded to return home.  They had observed the engine and cars passing down to the west; to the west of them, as we gather from the meager testimony before us, there was a regular street crossing, but plaintiff and his companion started across the tracks from the well without going to the public crossing.  Easley was somewhat in advance of plaintiff and got across the track, when he heard a distressed call from plaintiff.  He came back and discovered the plaintiff's foot was fastened in the switchfrog and according to his testimony

he notified a brakeman. That the car had stopped about forty-three feet from the frog, but was moving backwards at the time. He says the brakeman im-, mediately gave a stop signal to the engineer and ran to the plaintiff; that he undertook to get plaintiff's foot out of the frog and finding himself unable he loosed plaintiff for a moment and gave a second stop signal to the engineer; that seeing the train still approaching the brakeman came back to plaintiff, took hold of him and removed him from the track as far as possible, and while he was thus holding him one wheel of the rear car passed over plaintiff's leg severing the foot.

Plaintiff's individual testimony is substantially to the same effect as that of Easley. These two witnesses were both of the opinion that the car which run over the plaintiff was a loose car and one not attached to the engine. Plaintiff says the loose car was standing on the track when the train went down, but this is shown to have been an impossibility by all the testimony in the case, and this because the switchfrog whereat plaintiff was injured was the last one to the west in this switchyard and the engine in going to the west with its cars had to pass over this switchfrog. Easley was of the impression that the car was one of a number of cars drawn out by the engine from the stock track and cut off from the train after reaching the main track, thus leaving it unattached to the train. Plaintiff's witnesses show that there was a brakeman with a lantern on the rear car as the engine and cars passed down the track just before the injury.

For defendant it is shown that this train crew had been advised to keep a lookout for train No. 32, the regular freight train from the west; that the conductor had gone toward the west for the purpose of selecting the cars he had to switch and also to keep a lookout for the east-bound train. Members of the

train crew say that they saw nobody around the tracks as they moved these cars down to and upon the main track. One of the brakemen, Blackburn by name, got off of the train to open the switch and signalled the engineer to back. He says that he heard a boy holloa and gave a stop signal and ran to him. That he tried to get his foot out, but couldn't, and gave another stop signal, and then held the boy in such position as he would be injured the least possible. The other brakeman testified that he heard Blackburn call "stop" in a distressed tone, and that he gave the stop signal from the top of his car, and then jumped therefrom to go to Blackburn, thinking that Blackburn himself was in trouble; that he called to Blackburn to look out, whereupon Blackburn stepped to one side and he for the first time saw the boy.

By the engineer it was shown that after he received the signal to back up and started to back his train in on the stock track, he was at the same time keeping a lookout for the approaching train from the west, and that to protect his train from said approaching train he lit a fuse and threw it out as a signal to train No. 32. That this took but a few seconds and that thereafter upon looking to the rear he saw a violent stop signal and stopped his train within four or five feet after receiving such signal.

Plaintiff claims that the train was not moving when he got his foot caught and moved slowly at all times. All the evidence shows that it was quite dark and that the plaintiff did not or could not see the engineer or the engineer him. It is quite clear from the evidence that the engineer at no time knew of the danger of plaintiff or anybody else until he received the stop signal. Nor did he know of plaintiff's perilous position until after the injury.

Plaintiff offered several witnesses, the purpose of whose testimony was to show continuous user by pedestrians of the railroad track as a passage way or

footpath. This testimony tends to show that there was considerable travel at different points for a considerable distance, but the evidence is not very definite as to any particular pathway, nor does it disclose clearly whether or not the place where plaintiff was injured was at or about the alleged pathway claimed to have been used by the public. This sufficiently states the testimony.

The court of its own motion gave on behalf of the plaintiff the following instructions:

"1. The court instructs the jury that under the evidence and law in this case, the plaintiff cannot recover on the ground of any defect in the frog in which the plaintiff's foot was caught.

"If, however, you find from the evidence that, after plaintiff's foot was caught in the frog, the brakeman of the train in question discovered the fact that his foot was fast in the frog, and signalled the engineer to stop the train, and if, by the exercise of reasonable care, the engineer could have seen such signal and stopped the train in time to avert the injury complained of, and did not do so, then you shall find the issues for the plaintiff.

"2. The court instructs the jury that by ordinary care as used in these instructions, is meant such care as an ordinary, careful and prudent person would exercise under the same and similar circumstances.

"3. The court instructs the jury that if you find the issues for the plaintiff, Opal Hufft, you may, in assessing the damage, take into consideration his age at the time of his injury, if any, the extent of said injury, if any, together with the humiliation he has or may suffer by or on account of the loss of his said limb, if any, together with all the other facts and circumstances in evidence, not to exceed the sum of twenty thousand dollars."

The court of its own motion gave the following instruction for the defendant:

"1. The court instructs the jury that the defendant's engineer did not owe plaintiff the sole duty of keeping a lookout for the stop signals when he was backing his engine and cars, but if you find and believe from the evidence that another train was approaching his train on the same track, then it was also his duty to look out for it; and if you find and believe from the evidence that the engineer was exercising ordinary care to discharge both of said duties, when backing his said train, and while in exercising both of said duties with ordinary care he stopped his engine and cars as he saw said stop signals, given by the brakeman, or either of them, then your verdict must be for the defendant."

The court refused to give instructions numbered 2 and 3, asked by the defendant, which read as follows:

"2. The court instructs the jury that as to the plaintiff, Opal Hufft, the engineer in charge of defendant's engine that backed the cars over said plaintiff's foot was not required to be on the lookout for stop signals, and was not required to stop his engine until he actually saw said signals; and if you believe and find from the evidence that as soon as said engineer saw said stop signals he did all he could to stop his engine and cars, and stopped them, your verdict must be for the defendant.

"3. The court instructs the jury that, in backing his train towards the spot where Opal Hufft was caught, it was not the absolute duty of defendant's engineer to see the stop signal given by the brakemen, or either of them; that said engineer was only required to use ordinary care under all the facts and circumstances detailed in evidence to see said stop signals, and then to use such ordinary care after he saw said stop signals to stop his engine and cars; you are further instructed that if said engineer while so backing his engine and cars on the main line, saw

another train approaching him on the main line, then it was his duty to look out for and to use proper care under the circumstances, and the rules of the company, to stop said approaching train, and although you may believe from the evidence that said engineer did not see said stop signals when first given, yet if you believe that the only reason that he did not see them was because his attention during that time was called towards the approaching train, and that as soon as he could withdraw his attention from said approaching train, with safety to said trains, he looked and saw said stop signals and stopped his engine and cars, your verdict must be for the defendant.''

The court refused to give several instructions asked for the plaintiff which are not necessary to set out herein.

Points made will be noted in the course of the opinion.

I. The plaintiff attempts to plead three grounds of negligence in the second count of his petition. The first is the violation of section 1123, which statute requires the blocking of switchfrogs, and this for the purpose in the language of the statute ''to prevent as far as possible, the feet of employees or other persons from being caught therein.'' This question we would not discuss here, in as much as the court *nisi* did not submit it, but for the reason that it is well to discuss it to get at the real situation of the case. Plaintiff urges that the verdict was for the right party and this will further justify the mention of the question here.

The place of the accident was not a public crossing, but in the private switchyards of defendant. Under no circumstances in evidence could plaintiff be more than a bare licensee. To trespassers and bare licensees the defendant owes no duty to block frogs,

either under the statute or at common law. If there be no duty there can be no negligence.

In 23 Am. and Eng. Ency. Law (2 Ed.), 733, the rule is thus stated: "A statute requiring railroad companies to block the frogs and switches in their tracks is intended for the protection of employees, and an omission of this duty is not such negligence in respect to a trespasser as to render a railroad company liable for his death from being run over by a train while his foot was held by an unblocked frog."

To like effect is Elliott on Railroads, sec. 1258, whereat the author says: "No duty rests upon a railroad company in favor of trespassers or bare licensees, who use its track as a footway, to keep its switches blocked in its private yard in order to prevent injury to such persons."

In Minnesota there is a statute in all respects like ours. The relevant portion reads: "In order to guard against accidental injuries to employees and others, every railroad company shall properly adjust, fill, block, and guard all its frogs, switches and guard-rails." [R. S. Minn. 1905, sec. 1993.] In Akers v. Railroad, 58. Minn. 540, the question before us was before that court. This statute, like ours, originated in the year 1887, although ours was at first invalid and only became valid by re-enactment in 1891. [Wells v. Railroad, 110 Mo. 286; Brannock v. Railroad, 200 Mo. l. c. 567.] In the Akers Case user of the railroad track was shown and Erling, the deceased, lost his life by reason of getting his foot caught in an unblocked frog. The court held that there could be no recovery, because no duty was owing to the deceased from the company.

The same ruling was made by the Texas court in Railroad v. Lee, 34 S. W. l. c. 161. The court there says: "Since the evidence shows without contradiction that the switch was in the private yard of the appellant, it was under no obligation to the deceased

or other persons using the track as a footway to construct the track with a view to prevent injury to them. Appellant owed this duty to its employees, but not to those using its track as a footway, although its servants and agents knew of such use.''

In Carr v. Railroad, 195 Mo. 1. c. 225, this court said: ''The courts make a distinction between a person who comes upon a railroad's premises at the invitation of the railroad company, or for some purpose connected with its business, and a person who goes upon such premises for his own convenience or pleasure. In the one case there is a duty to protect the person thus going upon the property of another from injury, while on his premises, while as to the other, there is no such duty.'' See also exhaustive opinion by ELLIOTT, J., in Railroad v. Phillips, 112 Ind. 59.

We are of the opinion that the plaintiff in the case at bar did not fall within the classes entitled to the protection prescribed by the statute. In our judgment this statute can only be invoked by employees, or such other persons who are necessarily upon the railway tracks by reason of business with the company, or at the express invitation or direction of the company. Plaintiff falls within neither of the classes, and as to him the defendant owed him no duty in this regard, and its failure as to him was not negligence.

II. We reach now the second ground of negligence, and this we quote in full from the petition, for herein lie several close questions in the case. The language of the petition is: ''Defendant was further negligent in that after plaintiff's foot was caught and fastened, as above set forth, and while in this perilous condition and imminent danger, defendant's agents and servants then and there in charge of said engine and cars, as above described, *could and*

*should have,* by the exercise of reasonable care and caution on their part, prevented said injury, in that they *could and should have* discovered this plaintiff in this perilous condition in time to have avoided the same and *could and should have* by the exercise of reasonable care and caution, stopped said engine and cars in time to avoid injuring the plaintiff.''

It must be borne in mind that the plaintiff had previously pleaded long and continuous user of this portion of the track by pedestrians, and was therefore attempting in this charge of negligence to bring himself within the humanitarian rule. This rule is one well recognized in this State, but is one hard to outline in precise terms. We take it, however, that we have squarely fixed at least two classes of cases thereunder and the governing law therein. [Hall v. Railroad, 219 Mo. 553; Eppstein v. Railroad, 197 Mo. l. c. 733; Frye v. Railroad, 200 Mo. 377.]

(a) In the first place, if the person injured is at a place whereat the defendant is entitled to expect a clear track, and for that reason is not required to be on the lookout for persons on the track, then before there can be liability the plaintiff must show that the injured person was seen in a position of peril by defendant's servants in time for them to have prevented the injury by the exercise of reasonable care and caution, after such perilous position was seen and known.

(b) But if the person injured was at a place where defendant had no right to expect a clear track, and therefore there was upon its servants the incumbent duty to be on the lookout for persons upon the track, then if the injured person might have been seen in a perilous position in time to have prevented the injury, by the exercise of ordinary care and caution upon the part of defendant, its agents and employees, then the defendant is liable whether such employees actually saw him or not. And this, because it was

their duty to have been on the lookout for him and to have seen him.

The plaintiff brings his suit on the theory that he was in a position of peril and at a place whereat the defendant was not entitled to expect a clear track by reason of long and continuous user of the track at that place by pedestrians. No other theory can be gathered from the wording of this petition. This theory was never submitted to the jury. By instruction numbered 1 given by the court, the question of whether or not the track at the point of injury had been so long and continuously used by the public as a footpath as to indicate knowledge and acquiescence therein by the railway company, is not presented at all. Under the evidence in this record the court could not declare as a matter of law that there had been such user.

We must not overlook the fact that we have distinguished even between a day and night user. [Frye v. Railroad, 200 Mo. l. c. 401.]

It appears thus from the instructions given by the learned trial judge that he was of the impression that user of the track at the point of accident had not been sufficiently shown to entitle the plaintiff to have that question submitted to the jury. There is no plat of the *locus in quo* in evidence, and the description given by the witnesses as to the portion used by the public is so meager that we are unable to say whether there was sufficient evidence to submit the question or not. A more unsatisfactory record upon the question could not have been designedly prepared. If there was no sufficient user shown, then the plaintiff was a pure trespasser, and at a place where the agents in charge of defendant's train had a right to expect a clear track, and were under no obligation to be on the lookout for the plaintiff. And further if there was no such user shown, the plaintiff has been permitted to recover upon a theory not

pleaded in his petition. He does not charge that defendant's negligence consisted in knowing that he was in a perilous position and after such knowledge failed to use ordinary care to prevent his injury, but he contents himself with saying that he was at a place where the duty devolved upon the defendant to be on the lookout for him, and that by the exercise of ordinary care and caution they could have seen him and his peril in time to have prevented an injury.

It has long been the rule of this court that the instructions should not only be within the scope of the evidence, but within the scope of the petition as well. For a collation of the authorities see separate concurring opinion in Black v. Railroad, 217 Mo. 685.

This instruction numbered 1 does not present the case pleaded and presented by the petition, unless it be said that the trial judge meant to declare as a matter of law that the evidence disclosed such long and continuous user as indicated both knowledge of and acquiescence therein by defendant. There may be cases where courts will so declare but this is not one. To our minds the proper rule for guidance is well outlined in Eppstein v. Railroad, 197 Mo. l. c. 734.

III. But going a step further and conceding that the court, *nisi*, was of opinion that there was no sufficient evidence to authorize the submission of the question to the jury, and that the court did not mean, by instruction numbered 1 for the plaintiff, to declare as a matter of law that there had been such user, then how stand the instructions in this case?

Grant it to be true that a prompt response to the stop signal would have saved the plaintiff, yet if the plaintiff was at a place where the engineer in charge of the engine had no right to expect persons, other than employees, to be, his failure would not be negligence as to the plaintiff. In other words if the engi-

neer was at a place where he was entitled to expect a clear track, his duties as to looking out for stop signals is quite different to what they would be if he was running his train at a place where he was not entitled to expect a clear track. If the place of injury was where the engineer had the right to expect a clear track, then as said before, his failure to immediately heed the same would not be negligence toward plaintiff, because such signals at such a place would not be given for his benefit. In other words, stop signals at such a place would not contemplate plaintiff's presence there and a failure to heed them might be negligence as to some parties, but not as to him.

On the theory that there had been no sufficient user shown, then defendant's instruction numbered 2, refused by the court, properly declares the law. So that it matters not which notion was entertained by the trial court, there was error in instruction numbered 1 for plaintiff. That is to say, if the trial court meant to declare as a matter of law that such user had been shown, then there was error for that reason, and on the other hand if the court meant to declare that there was no user, and that the place was one where defendant was entitled to a clear track, then the instruction is erroneous, because it imposes the duty to observe the stop signals for the benefit of plaintiff, who, to the engineer, was an unknown and unseen trespasser. To such a person the engineer only owed the duty of obeying the stop signal after he saw it. He was not guilty of negligence toward the plaintiff until he did see it, any more than he would have been of failing to stop in that class of cases wherein he has a right to expect a clear track and fails to discover a person on the track in time to avert the injury.

The evidence in this case does not show that the engineer had knowledge of plaintiff's peril. He obeyed the signal to back up, and when he started his train backward he had the right to expect a clear track,

unless the proper user is shown. So that in our opinion the plaintiff in this case has no cause of action unless he can show such a user of the tracks at the point of injury as to establish both knowledge of and acquiescence in the same by defendant, and thereby impose the duty on defendant's engineer to be on the lookout not only for pedestrians, but to carefully watch for all stop signals, to the end that he might protect such expected pedestrians. We are not at all satisfied with the evidence upon the question of user. It is not definite enough in the present record to determine the portion of the track to which the user attaches, if to any. On any theory of the case we think there is error in instruction numbered 1 and error in permitting a recovery upon a theory not contained in the plaintiff's petition, but we likewise feel that upon a retrial of the cause the necessary facts may be shown. The Hall, Eppstein and Frye cases so thoroughly go over the requisites as to the *quantum* and character of proof required to show user that a mere reference thereto will be sufficient here.

Judgment is reversed and cause remanded. All concur, except *Woodson, J.,* who concurs in all that is said, except that he does not concur as to what is said as to notice to the brakeman. He holds that notice to the brakeman was notice to the company.