# PAUL M. SCHAAF, Respondent, v. ST. LOUIS BASKET AND BOX COMPANY, Appellant.

### Springfield Court of Appeals, November 10, 1910.

1. **NEGLIGENCE: Trespassers: Condition of Premises: Duty to Trespassers.** The general rule is that the landowner or occupant owes no duty to trespassers, volunteers, or mere licensees going upon the land for their own purposes to maintain it in any particular condition for their benefit. Such persons in going on said land assume the risk of injury from its condition.

2. **RAILROADS: Trespassers: Negligence.** If a person is on a track as a trespasser, or at a point where the railroad company had no reason to expect his presence, then the company owes him no duty until after his condition is discovered, but if he is on the track at a point where the company does not have the right to expect a clear track then it is the duty of the company to exercise reasonable care to discover his presence on the track and avoid injuring him.

3. **TRESPASSERS: Use of Property: Expecting Persons on Premises: Duty of Landowner.** The rule applied to railroads is applied generally to other cases. If a person knows that people are using property as a right of way, and have been using the same for such length of time that the presence of persons upon the same is to be expected, then it is his duty in making excavations across such pathway, or putting obstructions thereon to exercise reasonable care, and not to negligently injure persons in the habit of using such pathway.

4. **INSTRUCTIONS: Negligence: Confining to Specific Acts of Negligence: Adoption of Defendant's Form of Presenting Negligence.** Although it is improper in an instruction to use general terms describing the alleged acts of negligence, yet, where the instruction submitting defendant's theory also uses general terms in referring to the acts of negligence, and is as broad as plaintiff's instruction, he cannot complain that plaintiff followed the same course.

5. **MASTER AND SERVANT: Negligence: Use of Premises: Knowledge of Servant.** In negligence cases the knowledge of the servants in charge of the agency causing the injury, and whose negligence in connection therewith furnishes the ground of recovery, is in law the knowledge of the master, and where

the servants know that the public is using the master's prem-
ises as a right of way, and a person so using it is injured by
the servants, it is not necessary that the jury find that the
master also knew and acquiesced in the use by the public.

6. INSTRUCTION:   Cause of Injury:   Assumption of Fact:
Harmless Error.  Where there is no dispute in the evidence
that the acts of defendant's servants caused the injury, it is
not error to assume that such acts did cause the injury, in-
stead of requiring the jury to find that fact from the evidence.

7. NEGLIGENCE: Anticipating Result of Negligent Act: In-
struction.  A party charged with negligence must be in a
position to anticipate some bad effect as a result of his act,
but in such case he is liable for any injury resulting there-
from, whether he should in a given case have anticipated the
exact result or not.  An instruction requiring defendant's
servants to have anticipated in detail every result of their
negligent act is held erroneous.

8. ————:  Logs and Logging:  Injury from Cable:  Sufficiency
of Evidence.  Defendant's servants were engaged in pulling
or "snaking" logs by means of a drum, pulleys and cable; the
power being furnished by a stationary engine.  A snatch block
or changeable pulley had been fastened to a pile of logs, and
this drew the cable into an angle.  As a large log was being
pulled up slowly toward the railroad track and had reached
the point where it should have been stopped, the servant in
charge permitted it to go on until it struck the cross ties, and
then before the signal could be given to stop the power, the
snatch block was pulled out, and the cable swung with great
force across a path upon which plaintiff was walking and injur-
ed him.  Held, that the evidence was sufficient to go to the jury
on the question of defendant's negligence.

Appeal from  St. Louis  City  Circuit  Court.—*Hon.
Daniel G. Taylor*, Judge.

AFFIRMED.

*Seddon & Holland* for appellant.

(1)   The court erred in refusing to give the in-
struction in the nature of a demurrer to the evidence
offered by defendant at the close of the testimony.
(a)   Because the petition filed by plaintiff does not
state a cause of action.  Barney v. Railroad, 126 Mo.

372; Overholt v. Vieths, 93 Mo. 422; Moran v. Car Co., 134 Mo. 641; Rine v. Railroad, 88 Mo. 392; Hawkins v. Railroad, 116 S. W. 16; Foely v. McMahon, 114 Mo. App. 442; Glaser v. Rothschild, 106 Mo. App. 418; Carr v. Railroad, 92 S. W. 874; Wenecker v. Railroad, 169 Mo. 597; Dennis v. Larmore, 101 N. Y. 391; Kelly v. Benas, 116 S. W. 557.  (b)  Because under the testimony in the case the defendant owed plaintiff no duty except to avoid willfully injuring him.  (c)  Because the alleged negligence on the part of defendant's servants was not the proximate cause of plaintiff's injuries.  American Brewing Assn. v. Talbot, 141 Mo. 674; Fuchs v. St. Louis, 167 Mo. 620; Goodrich v. Railroad, 152 Mo. 222; Hysell v. Swift, 78 Mo. App. 39; Lohring v. Construction Co., 94 S. W. 747; Graney v. Railroad, 157 Mo. 666.  (2)  The court erred in giving instruction number one at the instance of plaintiff, because it allows a recovery on the part of plaintiff as a licensee without requiring a finding of knowledge of user or acquiescence in user on the part of defendant. Mulderig v. Railroad, 160 Mo. 655; Sommers v. Transit Co., 108 Mo. App. 319.

*George Safford* and *Thomas B. Harvey* for respondent.

(1)  A person walking upon property of another then and for years theretofore used by public generally is not a trespasser.  Eppstein v. Railroad, 197 Mo. 733; Cotner v. Railroad, 220 Mo. 308; Benton v. St. Louis, 217 Mo. 687; Morgan v. Railroad, 159 Mo. 279; Fearons v. Railroad, 180 Mo. 222; Scullin v. Railroad, 184 Mo. 707; Murrell v. Railroad, 105 Mo. App. 94; Maus v. Springfield, 101 Mo. 613; Baldwin v. Springfield, 141 Mo. 212.  (2)  A person is liable for injuring even a trespasser by active negligence, provided he knew persons were likely to be trespassing at the time and place of the injury.  Gallagher v. Humphrey, 6 L. T. (N. S.) 684; Corrigan v. Refining Co.,

98 Mass. 577; Lowe v. Salt Lake City, 13 Utah 91; Brill v. Eddy, 115 Mo. 603; Morgan v. Railroad, 159 Mo. 279. (3) Every fact which the evidence tends to prove, though but in the slightest degree, must be taken as admitted by an instruction in the nature of a demurrer to the evidence, and every inference which the evidence tends to show in plaintiff's favor should be drawn. Wilkerson v. Railroad, 26 Mo. App. 144; Field v. Railroad, 46 Mo. App. 449; Bender v. Railroad, 137 Mo. 240; Moore v. Railroad, 73 Mo. 439; Vautrain v. Railroad, 78 Mo. 45. (4) A general charge of negligence is sufficient where no demurrer or motion to make more definite and certain has been filed. Clippard v. Transit Co., 202 Mo. 432; Thurmond v. Ash, 125 Mo. App. 73; Rawson v. Railroad, 129 Mo. App. 613; Farsbinder v. Railroad, 126 Mo. App. 563; Lynch v. Railroad, 111 Mo. 605; Mack v. Railroad, 77 Mo. 232; Foster v. Railroad, 115 Mo. 165. (5) Whether or not a particular result which follows an act of negligence could have been foreseen, or the precise injuries anticipated, is not a proper criterion by which to determine whether or not such act was the proximate cause of such result. Railroad v. Chapman, 80 Ala. 615; Dixon v. Scott, 181 Ill. 116; Miller v. Railroad, 90 Mo. 389; Graney v. Railroad, 140 Mo. 89; Hoepper v. Hotel Co., 142 Mo. 378; Milwaukee Co. v. Kellog, 94 N. S. 469; Hill v. Winsor, 118 Mass. 251; Banks v. Wabash, 40 Mo. App. 458; Foster v. Railroad, 115 Mo. 165.

NOTE.—This cause was heard at the last term of this court and an opinion rendered affirming the judgment. Motion for rehearing was sustained and the cause reargued at this term.

COX, J.—This is a suit by respondent commenced in the circuit court in the city of St. Louis, to recover damages for injuries alleged to have been inflicted by the negligence of the appellant in operating a tramway

for hauling logs from a point near the Mississippi river to appellant's factory on the northeast corner of Second and Arsenal streets in the city of St. Louis.

The testimony on behalf of plaintiff tended to show that the defendant operated a basket and box factory on Arsenal street, in the city of St. Louis. Arsenal street, after intersecting Second street, extends easterly to railroad tracks which are near the river. On the south side of Arsenal street from Second street to the river, there is a stone wall. Immediately north of this stone wall and extending the entire length thereof, is a cinder path used by pedestrians. Arsenal street proper, north of this wall extending to the railroad, is about thirty feet wide. A short distance east of Second street, and on the north side of Arsenal street, are the buildings of the defendant, and they extend out to the line of Arsenal street. Just east of the defendant's plant, there is an indentation or jog, and the buildings of the St. Louis Barrel Works, instead of being on the building line of Arsenal street, are set back about ten or eleven feet. There is a strip of land about the same width between the north line of Arsenal street and the buildings of the St. Louis Barrel Works, and said strip extending from the east side of defendant's plant about two hundred feet to certain railroad tracks running north and south near the river. This strip of land was owned by another corporation and was leased by it to the defendant. Upon this strip defendant had, for several years, been maintaining a track or tramway about the width of an ordinary railroad track extending from its plant to the river, a distance of several hundred feet. This tramway was used for the purpose of hauling logs from the river to the factory by means of a car. The car was drawn from the factory to the river by a horse and back by cable, one end of which was attached to a drum at the plant, and the other end to the car. This drum was operated by steam power and as the power was applied, the cable was wound

Schaaf v. Basket and Box Co.

around the drum thereby drawing the car, or any other object attached to the other end of the cable toward the drum.

In addition to using the car and cable for hauling logs to the factory, the defendant used the cable for the purpose of pulling logs to a point where they could be loaded on the car. This was done by applying the end of the cable with hooks to a log. This process of dragging logs was called by the witnesses, "snaking the logs." The drum, around which the cable was wound, was at the plant of the defendant and north of the track in front of the plant. At a point south and east of the drum was a pulley around which the cable was required to run, and some distance from that pulley and to the south and east, near or on the track, was another pulley around which the cable also passed. There was a third pulley on the tramway in a culvert under the railroad track, running north and south, near the river. In this space between the second and third pulleys there were blocks of wood with a groove in the center so that the cable when in use would lie in said groove and was thereby kept in its place between the tracks.

In snaking the logs on the land east of the culvert it was often necessary to change the direction of the pulley, and for this purpose a snatch block was used.

The evidence shows a snatch block is a pulley that can be moved about from one place to another. As this snatch block was the last pulley from the drum and between it and the end of the cable or hooks which were attached to the logs, no other pulley was used, and it is apparent that the log to which the pulley was attached was always moved toward the snatch block. The snatch block was fastened to groups of logs which were designated by the witnesses as "dead men." It was the intention to fasten the snatch block in such a manner as to make the same immovable while the log was being drawn toward it.

The railroad tracks running north and south were high enough so that they passed over the culvert and the tramway was at the bottom of the culvert. and ran through it from east to west. At the time of the alleged injuries, a log was being moved from its position between the railroad tracks north of the culvert and toward one of the tracks with the intention to get the log over the railroad tracks and down the incline to the track at the bottom of the culvert. While the log. was being moved, it caught against a tie on the railroad track. From the place where the men were at work moving the log, they could not see the person in charge of the machinery operating the drum, and in order to give a signal when it was necessary to stop the power the defendant had erected an electric bell at the northeast corner of the culvert, and kept an employee at that point to give the signal whenever it was desired to have the power thrown off.

At the time the plaintiff was injured, the snatch block was located and fastened to a pile of logs east of the culvert, and on the south side of the tramway. From this snatch block the cable extended up the incline and over the track, and was fastened to a log between the tracks. This, of course, put the strain all on the snatch block, and as long as it held there was no danger from the cable leaving its place at any point between the snatch block and the drum unless it should break. When the log became fastened, the testimony shows the snatch block gave way and the cable was thereby caused to swing violently to the north and against the electric button or bell and knocked the same down. There was such a strain on the pulley under the culvert that it also gave way and the cable swung from its holdings from the center of the track to the north, so as to make a direct line between the culvert and the drum. At this time the plaintiff was walking eastward on a portion of the strip of land above mentioned between the tramway and the buildings on the

north, and was struck by the cable, and was so severely injured that no complaint is made in this court of the amount of damages recovered.

There was evidence that the party at the log gave a signal to the man at the bell to stop the power, but at just what time this signal was given does not appear, but it was evidently given after the log had become fastened and at a time when it was impossible for the bell man to give the signal because of the fact that the bell had been knocked down. The evidence also shows that the log they were snaking at the time of the accident was a large log—eighteen to twenty inches thick and eighteen feet long—and that it was being pulled toward one of the railroad tracks, but not with the intention of pulling it over the track. The intention was to stop and roll it over the track. The evidence further shows that the log was being moved at a slow speed.

When the testimony was taken the petition charged negligence in the construction of the track, cars, pulleys, cable, drum and engine; and alleged that at all times the same were in an unsafe and dangerous condition in that they were so negligently arranged and used and operated that the wire cable occasionally was thrown out of its usual line, and also alleged that the defendant negligently allowed the tracks, cars, pulleys, cable, engine and other machinery to become and remain in an unsafe and dangerous condition so that the operation thereof was a nuisance, and often did cause said cable to leave its usual course and be thrown in a position whereby it would, without notice or warning, strike and hurt any person lawfully in its vicinity, also that the defendant so carelessly managed and operated the said tracks and appliances that it was unsafe and dangerous for any person to be at or near the wire cable, and the defendant failed and omitted to use ordinary care to give persons warning.

After the testimony on the part of the plaintiff

had been taken, the court permitted plaintiff to amend his petition by which all allegations of negligence alleged in the former petition relating to the construction and management of the tram and machinery and appliances were omitted, and the only allegation of negligence in the petition as amended is ''that the defendant's servants carelessly and negligently permitted and caused the log fastened to its said cable, and which had then and there been securely and firmly attached for the purpose of removing said log, as aforesaid, to become obstructed and fastened, and thereby carelessly and negligently caused a great strain to be upon the cable, thereby causing said cable to displace and pull away from the pulleys, spools and moorings which were intended to confine said cable between the tracks aforesaid, and to cross over a pathway immediately north of said tracks, and to then and there strike the plaintiff across his legs.''

From the amended petition it will be seen that the only allegation of negligence is that the servants carelessly permitted the log to become fastened.

The plaintiff's testimony further tended to show that on an occasion before his injury he had applied for work at the Cooperage Company and had been told to return, and on the occasion in question, he was on his way east, down Arsenal street to the Cooperage Company for the purpose of securing work. Plaintiff also offered testimony tending to prove that for many years this cinder path, over which plaintiff was passing at the time he was injured, had been used by pedestrians, and not only by the employees of the appellant and of the Cooperage Company, but by persons generally, as a sidewalk.

The defendant denied the use of the pathway by the public, but as there was testimony supporting the theory of each of the litigants thereto it was a question for the jury.

The appellants claim that under the testimony, the defendant owed plaintiff no duty except to avoid willfully injuring him, and states: "The law is well settled, that while the owner of property owes to persons whom he invites upon his premises the duty of exercising ordinary care for their safety, he owes no duty whatever to trespassers or mere licensees except the duty to refrain from willfully injuring them."

In a case decided by this court at the last term (Henry v. The Disbrow Mining Co., 128 S. W. 841) the plaintiff was injured while walking down a railroad track, by reason of a pulley attached, as the snatch block was in this case, giving way and thereby causing the cable to strike him and break his leg. The testimony showed that the railway track, along which the plaintiff was walking at the time he was hurt, had been used by the employees of the mining company using the cable at the time and other employees in that neighborhood. The point was made, as here, that the company owed him no duty, except not to willfully injure him. After an examination of the authorities we declared:

"The general rule is that the landowner or occupant owes no duty to trespassers or volunteers going upon his land for their own purpose to maintain it in any particular condition for their benefit. Volunteers, mere licensees and trespassers, as a general rule, take the premises for better or worse, as they find them, assuming the risk of injury from their condition."

While the general rule is as above stated, yet the courts recognize the fact that it may be modified by special circumstances. The railroad company has the right to a clear track, and generally speaking, it is not liable for injury to persons upon its tracks, but if the company, with knowledge that persons are in the habit of, and had been for some time, using its track as a foot path so that the company has no right to expect a clear track, then it is the duty of the company to

exercise reasonable care to prevent injuring persons so on the track at such places.

If a person is on the track as a trespasser, or at a point where the company has no right to expect his presence, then the company owes him no duty until after his condition is discovered, but if he is on the track at a point where the company does not have the right to expect a clear track then it is the duty of the company to exercise reasonable care to discover his presence on the track. [Hufft v. Railroad, 222 Mo. 286, 121 S. W. 120.]

The rule applied to railroads is applied generally to other cases. If a person knows that people are using property as a right of way, and have been using the same for such a length of time that the presence of persons upon the same is to be expected, then it is his duty in making excavations across such pathway, or putting obstructions thereon, to exercise reasonable care, and not negligently injure persons so in the habit of using such pathway. [Beck v. Carter, 68 N. Y. 283; Bingford v. Johnson, 82 Ind. 430; Allison v. Haney, 62 S. W. 933; DeTarr v. Ferdheim Brewing Co., 61 Pac. 689; Rooney v. Woolworth, 61 Atl. 366; Cahill v. The Stone Co., 96 Pac. 84; Briscoe v. Henderson Lighting & Power Co., 62 S. W. 600.]

In addition to the above authorities, Chicago R. R. Co. v. Wymore, 58 N. W. 1120, supports the doctrine. In that case it is said, "A railroad company does not discharge its whole duty by refraining from wantonly injuring a trespasser upon its tracks after observing his position. It is bound, in all cases, to exercise reasonable care to avoid injuring all persons who are known to be, or who may be reasonably expected to be upon its right of way."

We believe that the doctrine announced in Henry v. Disbrow is supported by the weight of the authorities, and therefore adhere to that ruling.

Instruction number one given on behalf of the plaintiff is objected to because, as it is claimed, it uses general terms in describing the alleged acts of negli-gence. There is some force in this contention, for while a party may use general terms in a petition charging negligence and such petition may be held good after verdict, yet in preparing instructions to the jury they should be specific. [Mulderig v. The Railroad, 116 Mo. App. 94, S. W. 801; Sommers v. The Transit Co., 108 Mo. App. 319, 83 S. W. 268.] The jury should not be left to base a verdict upon any theory of negligence which they could construct or evolve out of their own minds. [Allen v. St. Louis Transit Co., 183 Mo. 411, 432, 81 S. W. 1142.]

While the instruction complained of in this case could have been drawn in better form, yet it is not entirely open to the objection made against it. It did require the jury to find that the injury was caused by the negligence of defendant's servants in causing and permitting the log to become obstructed and fastened and by doing so restricted the jury to the one act of negligence charged in the amended petition under which the case was submitted to them. Furthermore defendant adopted the same form of expression in its instructions and on this same question in instruction number ten, given at its request, we find the following language:

"If you believe and find from the evidence that said catching or fouling of said log against said tie or rail occurred without any negligence on the part of the servants of the defendant in charge of the same then and in that case . . . your verdict must be for the defendant."

This instruction which submitted defendant's theory of the catching of the log is as broad as the instruction given on part of the plaintiff, and having adopted that form of presenting the issue at the trial

it cannot now complain that plaintiff followed the same course.

Further objection is made to this instruction that it does not require a finding that defendant knew and acquiesced in the use made of the place where plaintiff was hurt by the public as a sidewalk, but only required a finding that the servants in charge of the work knew and acquiesced in such user. In negligence cases the knowledge of the servants in charge of the agency causing the injury and whose negligence in connection therewith furnishes the ground of recovery is, in law, the knowledge of the master, and this objection against this instruction is also untenable.

Instruction number two given on behalf of plaintiff is also challenged on the ground that it assumes a fact as true which the jury should have been required to find from the evidence. This instruction is as follows:

"The court further instructs the jury that if they find from the evidence that the defendant's employees engaged in operating the cable and moving the log, did the acts set forth in the first instruction in conjunction therewith, which directly caused the injury to plaintiff, if he was injured, and that said act was one which a person exercising ordinary care and prudence and engaged in the same business at the same time and place and under the same circumstances would not have done, then such act was negligence within the meaning of these instructions."

The contention is that this instruction assumes that the act described in instruction number one, which was the act of permitting the log to become fastened was the cause of the injury instead of requiring the jury to find that fact from the evidence. If there were any dispute in the evidence as to how the injury occurred this objection would be well taken, but as there was none the jury could not have been misled by it, and the error was, therefore, harmless.

Counsel for defendant strenuously insists that error was committed by the court in refusing instruction "F" asked by it. This instruction is as follows:

"The court instructs the jury that one of the defenses set up in this case is that the injuries complained of by plaintiff were, so far as the St. Louis Basket and Box Company is concerned, the result of mere accident and could not have been anticipated and avoided by said company by the exercise of ordinary care. And the court instructs the jury that if you believe and find from the evidence that the plaintiff was injured on account of the occurrence in rapid succession of the following events:

"1.  The catching of a log on an obstruction.

"2.  The pulling out of the deadwood.

"3.  The pulling down of the electric signal.

"4.  The pulling out of the pulley under the culvert.

"5.  The northward motion of rope.

"And if you further believe from the evidence that defendant could not, by the exercise of ordinary care, have reasonably anticipated the happening of all said events in rapid succession and also that just at the time the plaintiff would be in a position to be struck by said cable, then and in that case, your verdict must be for the defendant."

The vice of this instruction is that it requires the jury to find that the servants of defendant could, by the use of ordinary care, have anticipated, in detail, every result of their negligent acts, and also that the plaintiff would, at that particular time, be in a position to be injured. This is not the law. A party charged with negligence must, of course, be in a position to anticipate some bad effect as a result of his act, but not necessarily the particular result that did, as a matter of fact, follow. A party guilty of negligence must be held liable for any injury resulting proximately there-

from whether he should, in a given case, have anticipated the exact result or not.

This brings us to the contention of appellant that a demurrer to the testimony should have been sustained. Appellant contends that the evidence fails to show any negligence on the part of defendant's servants. In determining this question the plaintiff must be given the benefit of every reasonable inference that can be drawn from the evidence in his favor. It was the duty of the jury to first ascertain the duty, if any, which defendant owed the plaintiff. As we have already said they were clearly warranted by the evidence in finding that plaintiff had a right to be where he was at the time of the injury. This then cast upon the defendant the duty to use ordinary care for plaintiff's safety and the question now is was the jury warranted in finding that this duty was not properly discharged. Looking to the conditions at the time of the injury we find that the cable used in "snaking" the logs was kept at an angle and held in position by pulleys and blocks. This the man in charge of the log must have known, and he must also have known that should the cable break loose from its moorings it would fly to the north, and would be liable to injure anyone within its angle. In order that the machinery might be readily stopped whenever occasion should require an electric button was provided and a man kept stationed near it so that upon receiving a signal he could push this button and the machinery could then be stopped. It would thus seem that the appliances were ample and if they were properly used the defendant should be exculpated. Were they properly used? On the occasion of this injury the cable was fastened to a log, some eighteen or twenty inches in diameter and eighteen feet long—an object of considerable weight— and the log was being drawn slowly toward a railroad track with the intention that it should be drawn up to

the track, then stopped, the cable loosened from it and the log rolled over the track and down the incline to a place where it could be loaded and pulled over the tramway to the mill. The log was not stopped, but was permitted to proceed until it struck and became fastened against a cross tie of the railroad at which time the snatchblock gave way, the pulley under the culvert broke, the cable swung to the north, destroyed the electric button and also struck and injured plaintiff. The ground of negligence was in permitting the log to become fastened and the sole question is whether or not the man in charge of the log should have given a signal in time to have the machinery stopped before the log struck the cross tie and became fastened. It appears from the evidence that he did give a signal, but it was after the log had become fastened and when it was too late for the man near the button to give the signal to stop. Why did he not give the signal sooner? No answer appears in the testimony. Counsel for appellant contends that in "snaking" the logs no signal was expected to be given until the log fouled. Be that as it may, in this instance the log had reached its stopping place. The signal could just as conveniently have been given before the log struck as afterward, and there was ample opportunity to do so, for the log was moving slowly. There was no necessity for permitting it to continue until it struck the cross tie, and under all the evidence we are of the opinion that the jury were warranted in finding that the servant of defendant in charge of the log ought to have foreseen that the log would strike the cross tie, and ought to have known that when it did so strike that something would have to give way or break, and that therefore, he was negligent in not giving the signal and having the machinery stopped before the log struck and became fastened. The demurrer to the testimony was properly overruled. Judgment affirmed. *Nixon, P. J.,* concurs; *Gray, J.* dissents.